294 So.2d 648 (1974)
Joseph TAYLOR, Appellant,
v.
STATE of Florida, Appellee.
No. 44343.
Supreme Court of Florida.
May 15, 1974.
*649 Joseph A. Varon, Sp. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
McCAIN, Justice.
The defendant, Joseph Taylor, was tried by a jury and found guilty of murder in the first degree. The jury subsequently returned a recommendation of mercy, but the trial judge imposed a sentence of death in the electric chair. The defendant thereupon appealed to this Court. We have jurisdiction pursuant to Article V, Section 3(b)(1), Florida Constitution, F.S.A.
The evidence presented at trial established that the defendant, in the company of two other males, entered a "package store" owned and operated by Larry Phillips and his 72 year old father, the decedent, Max Phillips. The defendant, with pistol in hand, jumped over the counter after ordering an employee and a customer to lie face-down on the floor. During an ensuing struggle between the defendant and Max Phillips, Larry Phillips drew a pistol from beneath the counter and shot the defendant in the abdomen. While Taylor was on the floor, Larry Phillips fired four more times into the body of the defendant.
Larry Phillips testified that he heard a shot strike the bottles on the shelf near him as he attempted to activate a silent alarm in the rear of the store. Other shots were fired, three of which struck and killed Max Phillips. The fatal shot was shown to have entered the body of the decedent on a downward trajectory. The pistol used by Phillips was shown to have not fired the bullets which killed the decedent. The weapon carried by the defendant, Taylor, was never located, nor was the murder weapon found. The defendant was later arrested after he was admitted for treatment at a near-by hospital.
At the commencement of the trial, an eighteen year old, female juror was selected. After the jury was sworn, a short recess was taken, at which time a reporter for the Fort Lauderdale News approached this young juror and requested an interview while she was in technical charge of the bailiff. The juror refused to even give her name because of the admonition earlier given by the trial judge. The reporter claimed that she had gotten permission from the judge during the recess to interview this juror if the case was not discussed. It was not until the judge came down the corridor and assured the juror that it would be permissible to answer some questions that the juror talked with the reporter. She then gave a few summary answers to general questions about her background and a photograph was taken. Subsequently an article appeared, headlined: "1st Teen Juror Draws Murder Trial." As to this incident, the appellant raises as error the trial court's denial of a motion for mistrial where:
"... the trial judge had a confrontation with one of the jurors out of the presence of appellant or his counsel, and specifically permitted the lone juror to be interviewed by a newspaper reporter, to the prejudice of appellant."
Immediately after the jury returned its recommendation as to the sentence, the trial judge imposed the sentence stating:
"[T]he Court doesn't feel that it is compelled to go along with the recommendation of the jury and, therefore, hearing nothing sufficient it is the judgment of the Court and sentence of law that you be sentenced to death in the electric chair."
*650 As to the immediacy of the imposition of sentence, appellant questions whether:
"... the constitutional standard of due process (was) violated and the intent and meaning of F.S. 921.141 F.S.A. misapplied where the trial judge immediately overruled the jury's recommendation for life sentence and summarily sentenced appellant to death?"
As to the first alleged error, appellant contends that Florida Statutes, Section 918.07 (1971) F.S.A., precludes the trial judge or any other person from contacting a juror except by leave of court given in open court with the defendant or his counsel present.
This statute specifically provides that:
"918.07 Admonition to officer in charge of jurors.  When the jury is committed to the charge of an officer, he shall be admonished by the court to keep the jurors together in the place specified and not to permit any person to communicate with them on any subject except with the permission of the court given in open court in the presence of the defendant or his counsel. The officer shall not communicate with the jurors on any subject connected with the trial and shall return the jurors to court as directed by the court."
However, this statute must be read in conjunction with other statutes, specifically: Fla. Stat. §§ 59.041 and 924.33 (1971), F.S.A. These statutes provide that no judgment may be overturned nor a new trial ordered where the error complained of did not injuriously affect the substantial rights of the appellant.
The "harmless error" statutes would apply if it could be determined from a reading of the record that the contact had no prejudicial effect on the juror. See Slinsky v. State, 232 So.2d 451 (Fla.App. 1970). But unlike the Slinsky case, here, the trial judge held a hearing to determine the effect, if any, the contact with the reporter and the judge had upon the juror's determination. It is clear from her testimony that she had not discussed the case with the reporter or anyone else; had received only permission to talk with the reporter from the judge, with the added admonition not to discuss the case with her; had not read the article; and in fact testified that it had not affected her decision in any way.

"EXAMINATION
"BY MR. HAND:
Q. Mrs. Bruce, did anyone, that is Barbara Malone or anybody else, ask you or discuss with you anything about the facts of this case?
A. No, sir, absolutely not.
Q. I mean, from the moment the trial started?
A. From the time I walked into this court room Monday morning until now no one has asked me any questions about this trial.
Q. You have not discussed with anyone anything about the facts or anything about this case?
A. Not until we were allowed to last night among ourselves.
Q. Right. And did the fact that newspaper reporter ask you if you were proud to serve or the fact  informed you that you were the first 18 year old, did this in any affect your decision as to the guilt or the innocence?
A. No, sir.
Q. Do you feel that you were under any type of undue duress, strain in any way because of what happened with the newspaper article?
A. Just a little nervous right now being in here, that's all.
Q. Right. I can understand that.

*651 A. But if you're asking me am I scared, no, I am not.
Q. And it did not affect your decision in any way?
A. No, sir; it didn't.
MR. HAND: That's all."
Appellant argues that Deans v. State, 180 So.2d 178 (Fla.App. 1965) is controlling. In Deans, a prosecution witness, a policeman, gave a traffic ticket to one of the jurors and a subsequent conversation ensued between the judge and the juror concerning the effect of her receiving the traffic ticket. A new trial was ordered on the ground that even though there were no improper motives involved, lofty purposes are not sufficient to eliminate the prejudice which flowed from such actions. The same prejudice was the turning point in Lowdermilk v. State, 186 So.2d 816 (Fla. App. 1966). However, in this case we find no such prejudice flowing from the conversation nor does the appellant demonstrate any which could be considered a denial of due process or equal protection.
As to this point we are bound by the "harmless error" statutes which state:
"59.041 Harmless error; effect.  No judgment shall be set aside or reversed, or new trial granted by any court of the state in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed."
"924.33 When judgment not to be reversed or modified.  No judgment shall be reversed unless the appellate court is of the opinion, after an examination of all the appeal papers, that error was committed that injuriously affected the substantial rights of the appellant. It shall not be presumed that error injuriously affected the substantial rights of the appellant."
The trial judge was therefore correct in denying the motion for mistrial upon the showing of the absence of a specific fundamental or prejudicial error. See Perry v. State, 146 Fla. 187, 200 So. 525 (1941); Evers v. State, 280 So.2d 30 (Fla.App. 1973).
As to appellant's second point, dealing with the rejection of the jury's recommendation of mercy and the immediate imposition of the death sentence, we must look to the language and intent of Florida Statutes Section 921.141, F.S.A., as amended by Chapter 72-724, Laws of Florida (1972). The pertinent part of that statute reads:
"(3) Notwithstanding the recommendation of a majority of the jury, the court after weighing the aggravating and mitigating circumstances shall enter a sentence of life imprisonment or death, but if the court imposes a sentence of death, it shall set forth in writing its findings upon which the sentence of death is based ..." (Emphasis supplied.)
We are not unmindful that the trial judge heard all the evidence offered during the trial and that at the second hearing no additional evidence was advanced in aggravation, nor in mitigation. However, his immediate rejection of the jury's recommendation upon its return to the courtroom does not comport with the intent of the legislation.
From our reading of the record it appears that the trial judge in his haste to impose sentence may not have properly considered the mitigating circumstances enumerated by the statute and found in the record.
*652 The statute provides:
"(7) Mitigating circumstances.  Mitigating circumstances shall be the following:
(a) The defendant has no significant history of prior criminal activity.
(b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
(c) The victim was a participant in the defendant's conduct or consented to the act.
(d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
(e) The defendant acted under extreme duress or under the substantial domination of another person.
(f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
(g) The age of the defendant at the time of the crime."
The record discloses that the appellant has no prior history of criminal activity. At the instant of firing the fatal shots, the appellant was on the floor with five .38 caliber bullets in his body, two of which are still in his body being lodged in close proximity to his spine. And finally, the fatal bullet entered the body of the deceased in a downward trajectory, which at least raises the possibility that the appellant had not fired the shot. This is additionally supported by the fact that no witness saw who in fact fired the fatal shot.
All of this taken together could have substantially impaired the rationality of appellant to the point where the jury, believing his complicity, nevertheless rejected the idea of the imposition of the ultimate penalty. We find no objection to the jury's determination.
Therefore, the order imposing the sentence of death be and the same is hereby reversed with directions to impose a sentence of life imprisonment in accordance with law and the recommendation of the jury.
Accordingly, this cause is affirmed in part, reversed in part and remanded for further proceedings consistent herewith.
It is so ordered.
ADKINS, C.J., ERVIN and BOYD, JJ., and HENDRY, District Court Judge, concur.
ROBERTS, J., concurs in part and dissents in part with opinion.
ROBERTS, Justice (concurring in part and dissenting in part):
I concur in that part of the judgment which affirms the finding of guilt but I respectfully dissent from that part whereby this Court reduces the sentence from death to life imprisonment. Like the trial judge I find no mitigating circumstances in the record.