390 So.2d 315 (1980)
Amos Lee KING, Appellant,
v.
STATE of Florida, Appellee.
No. 52185.
Supreme Court of Florida.
May 8, 1980.
Rehearings Denied September 26 and December 11, 1980.
*316 Jack O. Johnson, Public Defender, and W.C. McLain, Asst. Public Defender, Bartow, for appellant.
Jim Smith, Atty. Gen., and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
The appellant Amos Lee King was convicted by a jury of the first-degree murder of Natalie Brady and of the offenses of escape, involuntary sexual battery, robbery, arson, and attempted first-degree murder of James McDonough. After a jury recommendation of death for the first-degree murder conviction, the trial judge imposed the death sentence. We have jurisdiction.[1] We affirm the convictions and the imposition of the death sentence.
The relevant facts are as follows. On March 18, 1976, the appellant was an inmate at the Tarpon Springs Community Correctional Center, a work release facility, *317 serving a sentence for larceny of a firearm. On this date a routine bed check was made by James McDonough, a prison counselor, at about 3:40 a.m. The appellant King was absent from his room. The counselor began a search of the building grounds and found the appellant outside the building. Appellant was wearing light-colored pants which had the crotch portion covered with blood. The counselor directed King back to the office control room inside the building. When the counselor turned to get handcuffs, King attacked him with a knife. A struggle ensued, and the counselor received several cuts and stab wounds. King left the office, then returned and found the counselor talking to his superior on the phone. He stabbed the counselor again and cut the telephone cord.
At approximately 4:05 a.m., the police and fire personnel arrived at the scene of a fire at a house approximately 1500 feet from the correctional center. The police officers discovered the body of Natalie Brady. She had received two stab wounds, bruises over the chin, and burns on the leg. An autopsy revealed other injuries, which included bruises on the back of the head, hemorrhaging of the brain, hemorrhaging of the neck, and broken cartilage in the neck. There was a ragged tear of the vagina, apparently caused by the wooden bloodstained knitting needles which were found at the scene, as well as evidence of forcible intercourse. Appellant's blood type was found in Brady's vaginal washings. The medical examiner attributed Mrs. Brady's death to multiple causes and established the time of death as 3:00 a.m. Arson investigators concluded that the fire was intentionally set at approximately 3:00 to 3:30 a.m.
An indictment charging King with the first-degree murder of Natalie Brady, together with the arson and robbery of her house, was returned by the grand jury. The state attorney filed a direct information, charging King with escape and the attempted murder of McDonough. Although the information and indictment offenses were not consolidated, both were set for trial on July 5, 1977. Pretrial motions and orders were considered jointly, with one order being entered. On the date of trial, counsel for the defendant advised the court that he would not agree to a consolidation, and the court advised the state that it could proceed on either the indictment or the information offenses. The state initially elected to proceed on the information offenses but subsequently, on the basis of new authority under Florida Rule of Criminal Procedure 3.151, moved to consolidate. The motion was granted.
The jury found King guilty of all offenses and recommended the imposition of the death penalty for the first-degree murder. The trial judge immediately imposed the death penalty and subsequently filed written findings of fact in support of that decision.

Part I  Convictions
The appellant raises five challenges to the validity of his convictions.

Consolidation
Appellant's first argument is that the indictment offenses were improperly consolidated with the information offenses. Appellant contends that (1) no consolidation is proper without consent of the defendant, and (2) even if it is allowable, the request in this instance was so late as to be necessarily prejudicial.
Prior to July 1, 1977, the state was without authority to move for consolidation. On that date, an amendment to Florida Rule of Criminal Procedure 3.151 was adopted. After amendment, the rule stated: "(b) Two or more indictments or informations charging related offenses shall be consolidated for trial on a timely motion by a defendant or by the state." (emphasis added.) The underlined amendment, allowing the state to request consolidation, was thus in effect at the time of the consolidation motion.
We find that the trial court was not in error in granting the consolidation motion. The record reflects that these two causes had been consistently treated as one during the course of pretrial proceedings and that *318 counsel for appellant was prepared to try all offenses on the trial date. The state could not have moved to consolidate at an early stage of the case, as such a motion was not authorized until July 1. The consolidation caused no undue prejudice.
Further, the evidence of the attempted murder of the prison counselor and the appellant's escape from the prison complex would, in our view, be clearly admissible in the trial of the indictment offenses even if they had not been consolidated. Considering the manner in which these causes were treated prior to trial, the fact that counsel was fully prepared to try all offenses, and the fact that evidence for any of the offenses would have been admissible in whichever one was tried separately, we find that there was no prejudice to the appellant in this cause.

Presence of Cameras in the Courtroom
The appellant objected to the presence of television and still cameras at his trial and contends that (1) the presence of cameras in the courtroom is inherently prejudicial and (2) the presence of cameras produced negative effects in this case sufficient to warrant reversal. The contention that cameras in the courtroom are inherently prejudicial is without merit and has previously been expressly rejected by this Court. Clark v. State, 379 So.2d 97 (Fla. 1979); In Re Petition of Post-Newsweek Stations, Florida, 370 So.2d 764 (Fla. 1979). With reference to the second point, we find that King has failed to demonstrate any specific denial of due process resulting from the presence of cameras in the courtroom during his trial. General allegations of prejudice are insufficient. The record reflects that the trial court was alert to any possible disruption or prejudicial effect the cameras might have had during the course of the trial. In response to certain objections and conclusory statements made by appellant's counsel concerning the cameras, the trial court stated: "I will not hesitate to have them removed from the courtroom." In denying the objections made by counsel for the appellant, the trial court stated:
Mr. Rondolino, I have also been aware of their [cameras] presence. I have a much better view of their activities than you do... . I have also been aware of the jurors and from what I have been able to determine from the jurors their attentions have been devoted exclusively and entirely to the witnesses' testimony.
In our examination of this record, we find no demonstrated evidence of prejudice resulting from the presence of cameras during the course of the trial of this cause.

Juror Excused for Cause and Voir Dire Inquiry
The appellant contends that a prospective juror was improperly excused for cause after the following colloquy:
THE COURT: Mrs. Holenda and Mrs. King, did I ask you these questions also with respect to the penalty?
VENIREWOMAN HOLENDA: You didn't ask. I'm sorry, I don't believe that I could be impartial. I'm against capital punishment.
THE COURT: Well, here again, as I indicated to Mr. Farmer, even though you are against capital punishment, the jury itself would not be imposing the same. You would be asked to reach a verdict based upon the testimony, the evidence, and the law based as to his guilt or innocence as to each of the charges, and then as to the punishment as it relates to capital punishment. You would then be asked to vote to advise the Court as to what the jury feels would be the proper punishment. I would not be bound by your opinion, however.
VENIREWOMAN HOLENDA: I understand, but I do feel strongly about it. I'm sorry, but that's exactly how I feel.
After this juror was excused, a bench conference was requested, at which time counsel for the appellant and the state, together with the court, discussed the appropriate type of question that should be asked a prospective juror who appeared to oppose the imposition of the death penalty. The Witherspoon requirements were reviewed, and, at the conclusion of the conference, counsel for the appellant commented:

*319 MR. RONDOLINO: ... I just wanted to make sure we aren't excluding a group of people that shouldn't be excluded from a jury trial. There's no  doesn't appear to be a serious problem at this time, but if it would continue, I think we'd get 
THE COURT: What you are saying is that the question should be under no circumstances could they vote to impose the death penalty.
MR. RONDOLINO: Right.
[Emphasis added.]
We faced a similar issue in Witt v. State, 342 So.2d 497 (Fla. 1977), in which we stated:
It is proper to exclude prospective jurors who "state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt ... [or] who say they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them." Witherspoon v. Illinois, 391 U.S. 510, 513-14, 88 S.Ct. 1770, 1772, 20 L.Ed.2d 776, 780 (1968) (footnotes omitted).
See Portee v. State, 253 So.2d 866 (Fla. 1971).
We find the venirewoman was properly excused. Her response to the court's inquiry was sufficient to indicate that her reservations about capital punishment would prevent her from making an impartial decision as to the defendant's guilt. See Jackson v. State, 366 So.2d 752 (Fla. 1978). The record also clearly reflects that counsel did not object or believe there was a serious Witherspoon problem concerning this juror.
The appellant further argues that it was error for the trial judge to sustain an objection to appellant's general questioning of prospective jurors on voir dire. The controversial exchange was:
MR. RONDOLINO: Mrs. Maltese, would you be in favor of having a mandatory death penalty for certain crimes?
VENIREWOMAN MALTESE: No, sir.
MR. RONDOLINO: Would anybody here be in favor of having a mandatory death penalty 
MR. MEISSNER: Your Honor, I'm going to object. That's not proper voir dire.
THE COURT: Sustained.
We find the form of inquiry to be improper. The question was asked collectively of the prospective jurors, and this is proper only if both the state and the defendant consent. See Fla.R.Crim.P. 3.300(b). In addition, the objection also would have been sustainable on subject matter grounds. The purpose of voir dire examination is to obtain a fair and impartial jury to try the issues in the cause. Cross v. State, 89 Fla. 212, 103 So. 636 (1925). The subject question, however, did not address the juror's impartial application of existing law, but rather it concerned her conception of what laws should exist. We find the trial judge was clearly within his discretionary authority in sustaining the objection to the proposed inquiry.

Statements Against Interest
The final point raised by the appellant concerning his conviction involves statements, admitted over his objection, which he gave to two deputies subsequent to an alleged request for counsel. The record indicates that there was conflicting but competent evidence to sustain a finding that no request for an attorney was made prior to the subject statements. The trial court did suppress certain other statements on the grounds that they were made after a request for counsel. We find no reversible error in the admission of the subject statements.
For the reasons expressed, we find the evidence clearly sufficient to sustain each of the convictions.

Part II  Sentencing

Non-Capital Sentencing Issues
The appellant contends that because the trial court imposed the death sentence for the felony murder of Natalie Brady, it could not also impose a judgment and *320 sentence for the underlying felony of involuntary sexual battery. We agree. Where the underlying felony was an element of the felony murder, a defendant cannot be sentenced for both the underlying felony and the felony murder. Mahaun v. State, 377 So.2d 1158 (Fla. 1979); State v. Wright, 379 So.2d 96 (Fla. 1979); State v. Pinder, 375 So.2d 836 (Fla. 1979). We find that appellant's sentence for involuntary sexual battery must be vacated.
The appellant also contends that the trial court erred in sentencing him to life imprisonment for the attempted first-degree murder of McDonough. Attempts to commit a capital felony are sentenced as first-degree felonies, which always carry a maximum sentence of thirty years absent a statutory provision authorizing life. There is no such authorizing statute for attempted first-degree murder, thus the sentence of life was improper. The state concedes error, and the appellant must therefore be remanded to the trial judge for resentencing for the offense of attempted first-degree murder.

Imposition of the Death Sentence
In imposing the death penalty, the trial judge found the following aggravating circumstances: (a) the crime was committed while the appellant was under sentence of imprisonment for larceny of a firearm [section 921.141(5)(a)]; (b) the appellant had previously been convicted of a felony involving the threat of violence to the person, specifically robbery [section 921.141(5)(b)]; (c) the appellant, in committing the crime of murder, further committed the offense of arson and thereby knowingly created a risk of death to other persons [section 921.141(5)(c)]; (d) at the time of committing the offense of first-degree murder, the appellant had committed burglary in the home of the victim [section 921.141(5)(d)]; (e) the crime for which the appellant was sentenced was heinous, atrocious, and cruel because of the total factual circumstances that resulted in the death of this sixty-seven-year-old victim [section 921.141(5)(h)]; (f) the appellant returned to the Tarpon Springs Correctional Facility where he attacked an unarmed counselor and stabbed him twenty times in the course of two attacks [section 921.141(5)(b)]. The trial court found the only mitigating circumstances to be the appellant's age of twenty-three years and held that the aggravating circumstances outweighed the mitigating circumstances.
Appellant contends that the statutory aggravating circumstance of knowingly creating a great risk of death to many persons, based upon the arson offense, was not justified because no person other than the murder victim was in the house at the time of the arson. We reject this contention and find that when the appellant intentionally set fire to the house, he should have reasonably foreseen that the blaze would pose a great risk to the neighbors, as well as the firefighters and the police who responded to the call.
Appellant next contends that the trial court erred in designating the attempted murder of the prison counselor as an aggravating circumstance, asserting that the stabbing cannot be considered a previous conviction for a violent felony because that conviction was returned jointly with the instant first-degree murder conviction. We disagree. The conviction for the attempted murder was a fact at the time the jury considered its recommendation to the trial judge and at the time the trial judge imposed the death sentence. Although the facts are not identical, an analogous result was reached in Elledge v. State, 346 So.2d 998 (Fla. 1977), wherein the sentencing judge properly considered as an aggravating circumstance a murder committed later in time than the subject murder, but for which a conviction already had been obtained in a separate proceeding. The legislative intent is clear that any violent crime for which there was a conviction at the time of sentencing should be considered as an aggravating circumstance. Prior convictions in existence at the time of sentencing is a normal factor considered in all sentencing and is generally recognized as appropriate in sentencing guidelines. See ABA Sentencing *321 Alternatives and Procedures (1979). We find the legislature intended that the attempted murder be considered as an aggravating factor in an instance of this type. In reaching this decision, we have not overlooked our decision in Meeks v. State, 339 So.2d 186 (Fla. 1976). The convictions in Meeks are factually distinguishable from those in the instant case; however, to the extent there is conflict with Meeks, we hereby recede.
The appellant also contends that the trial court committed error by finding this murder heinous, atrocious, and cruel. The record evidence in this case clearly justifies this finding; the facts as stated in the beginning of this opinion speak for themselves.
Finally, appellant argues that the trial judge erred in immediately imposing the death penalty upon receipt of the jury's recommendation of death. Relying on Taylor v. State, 294 So.2d 648 (Fla. 1974), appellant maintains that the judge should have afforded himself more time for deliberation for such an important decision. We do not find that the trial judge in this instance made a summary decision. A judge is not barred from considering and deliberating the aggravating and mitigating circumstances while the jury also deliberates.
The record reflects that at the conclusion of this case, on Friday, July 8, 1977, the judge asked counsel for the appellant whether he knew of any legal cause why sentence should not be imposed. Counsel offered no such cause. The judge then proceeded to impose the death penalty, consistent with the jury recommendation. At that time the judge stated that he would submit a written finding of the aggravating circumstances justifying the sentence on Monday, July 11. The sentencing order was in fact filed on the following Monday.
The trial judge did not make a summary decision in imposing the death sentence. His written findings reflect a specific application of the facts to the statutory aggravating and mitigating circumstances. There is no legal principle which bars the trial judge from considering the aggravating and mitigating circumstances while the jury similarly deliberates. The Taylor case is not controlling. In Taylor the trial judge imposed the death penalty despite a jury recommendation of life imprisonment. In ordering the death penalty, the judge gave no express consideration to the statutory sentencing factors and made no written findings as required by the statute. We find no reversible error in the sentencing procedure utilized by the trial court in the instant case.
Appellant's final point challenges the constitutionality of our death penalty statute on the basis of the United States Supreme Court decision in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 261, 54 L.Ed.2d 173 (1978), on the asserted grounds that our statute limits consideration of mitigating factors. We have previously rejected this contention in our decision in Clark v. State, which expressly held that the statutory mitigating factors as stated in section 921.141(6) are not exclusive. The appellant in the instant case has advanced no mitigating factors which were ignored by the trial judge due to any misapplication or misconstruction of the statute. We find this contention without merit.
In accordance with the views expressed in this opinion, all of the appellant's convictions are affirmed. We agree that the death penalty is clearly an appropriate punishment in this cause, and therefore affirm the death sentence. We affirm the sentences imposed for escape, robbery, and arson. For the reasons expressed, we vacate the sentence imposed for the involuntary sexual battery and remand for resentencing for the offense of attempted first-degree murder.
It is so ordered.
ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.
ENGLAND, C.J., and SUNDBERG, J., concur with the Court's affirmance of King's convictions, the Court's disposition of *322 other sentences and, on the basis of Hargrave v. State, 366 So.2d 1 (Fla. 1978), the affirmance of King's sentence of death.
NOTES
[1] Art. V, § 3(b)(1), Fla. Const.