533 So.2d 1137 (1988)
Jesus SCULL, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 68919.
Supreme Court of Florida.
September 8, 1988.
Rehearing Denied December 5, 1988.
*1138 Robin H. Greene, Coral Gables, for appellant, cross-appellee.
Robert A. Butterworth, Atty. Gen. and Steven T. Scott, Asst. Atty. Gen., Miami, for appellee, cross-appellant.
PER CURIAM.
We have before us this appeal from a judgment of conviction for first-degree murder and a sentence of death of Jesus Scull for the murders of Miriam Mejides and Lourdes Villegas. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons which follow, we affirm the conviction, but vacate the sentence and remand this case for a new sentencing proceeding before the trial court judge.
On Thanksgiving evening of 1983, the charred bodies of Mejides and Villegas were found in Villegas' burning house in Miami. Both women had been beaten to death, probably with a baseball bat. Evidence at trial showed that both women died before the fire had been set. The fingerprints of the defendant, Jesus Scull, were identified on a baseball bat found in the room with the women.
That same evening a car, which was determined by authorities to belong to Lourdes Villegas, was involved in a collision on Interstate 95 in Miami. After the car rolled over, the driver escaped and fled into the night. Scull's fingerprints were found on the car window. Scull was found in the apartment of a friend. Upon his arrest, Scull gave a statement to police to the effect that, while he did have a cocaine deal in the works with the women and that Villegas did loan her car to him, he did not kill them.
Prior to trial, upon Scull's request the public defender was removed from representing him. Scull unsuccessfully attempted to have an appointed attorney removed for conflict of interest. On March 7, 1986, the jury returned verdicts of guilty on both counts of first degree murder. Following these verdicts, the judge granted defense counsel's motion for a six week continuance before commencing the penalty phase of the trial. The judge instructed the jury to return in six weeks and, in the meantime, not to discuss the case with anyone.
After the jury was released, the jury foreman approached Villegas' family and embraced her mother. Several other jurors witnessed this embrace and the conversation between the foreman and the woman which followed. The content of the conversation is unknown. When the court reconvened six weeks later, the defense counsel moved to dismiss the entire jury panel. Following individual voir dire of the jurors, the court decided to retain the jury. Upon motion by the state, the jury foreman was removed and replaced with an alternate. Following a penalty phase hearing and a *1139 jury recommendation of death, the judge entered an order sentencing Scull to death, finding the following aggravating and mitigating factors:

Aggravating Circumstances:
1. The defendant knowingly created great risk of death to many people by setting a fire;
2. the capital felony was committed while defendant was engaged in a ... burglary;
3. the capital felony was committed to avoid lawful arrest or effecting an escape;
4. the capital felony was committed for pecuniary gain;
5. the capital felony was heinous, atrocious, and cruel;
6. the capital felonies were cold, calculated, and premeditated.

Mitigating Circumstances:
1. The defendant has no significant history of prior criminal activity;
2. the age of the defendant at the time of the crime.
Scull raises four issues on appeal. These are:
1. Whether the trial judge conducted an adequate inquiry into Scull's motion to discharge counsel for conflict of interest;
2. Whether the trial court erred in not discharging the sentencing jury following the misconduct of the jury foreman;
3. Whether the evidence supports the aggravating factors found by the judge; and
4. Whether the trial judge's consideration of a "victim impact statement" found in the presentence investigation report was error under the United States Supreme Court ruling in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).
In addition the state, on cross-appeal, challenges the validity of the mitigating circumstances found by the trial court.
The first issue raised by Scull concerns the adequacy of the inquiry made by the trial court into Scull's motion to remove counsel for conflict of interest. In order to fully discuss this allegation, it will be necessary to review the proceedings in which the inquiry was made. The following exchange took place between the judge and Scull (through an interpreter):
THE COURT: Mr. Scull, why do you feel that it's necessary that Mr. Van Zamft [Scull's attorney] no longer represents you?
THE DEFENDANT: He said that he could not come to see me. I feel that I have a right to be able to see him whenever I need him and he has 
THE COURT: Well sir, he is not a servant; he is not your personal servant, Mr. Scull. He is not at your beck and call. The law requires you to have an attorney, but he does not have to come and see you every time that you snap your fingers over there. Now, the man is a competent lawyer.
THE DEFENDANT: I know that.
THE COURT: Now, you have two choices. Let's get something very clear, let's get something very clear and straight. Either Mr. Van Zamft is going to represent you or you are going to try this case by yourself. So you had better make up your mind about the facts of life here. Do you want to represent yourself?
THE DEFENDANT: I accept what he says.
THE COURT: Okay, so Mr. Van Zamft will continue to be your lawyer.
* * * * * *
THE COURT: In his letter to you, the only real gripe that you have is that he does not come over to see you every time you snap your fingers. Well, the game is not played that way, Mr. Scull.
THE DEFENDANT: No, no, I am not saying that.
THE COURT: I'm just telling you pal, that you have two choices. Now either you accept Mr. Van Zamft or you are going to trial by yourself. So you make the choice.
* * * * * *

*1140 THE DEFENDANT: I have two years and three days waiting for this.
THE COURT: Well, Mr. Scull, the wait is almost over. Mr. Van Zamft is going to represent you.
THE DEFENDANT: If I wait another year it does not matter.
THE COURT: Well, Mr. Van Zamft is going to represent you and that's the last I want to hear about it. Thank you.
MR. NOVICK (The Prosecutor): All right Judge. I will go ahead and telephone Mike for you, Judge.
THE COURT: Fine, thank you.
THE DEFENDANT: Now, if I go ahead and accept him to represent me because I cannot represent myself because I know nothing about law 
THE COURT: Well, that's the choice,
Mr. Scull. You've got two choices. You can have Mr. Van Zamft represent you.
THE DEFENDANT: Is that the option?
THE COURT: Yes, that's the option.
THE DEFENDANT: Then go ahead and condemn me. Sentence me if that's the option that I have.
THE COURT: Well, sir, that's what the bottom line is going to be.
THE DEFENDANT: I am telling you that I am going to accept him whatever he says.
THE COURT: Well, that's what I'm saying, Mr. Scull and he is a good lawyer. He will represent you very fairly.
* * * * * *
THE COURT: Well, he is very happy to represent you, sir. The point is that he does not want you to harass his office, making unnecessary calls and that is his point.
THE DEFENDANT: I am not harassing, but I have never called him. This man has seen me twice already; that's all. I don't bother him.
THE COURT: Fine, we will make sure that he gets over to see you. We will get this case ready to go. I am not going to appoint another lawyer so you can just forget about that.
THE DEFENDANT: I don't want this lawyer. I don't want him; take him off the case.
THE COURT: Why?
THE DEFENDANT: Because I understand that he is not going to defend me. I have a year with him already. He said that the judge had denied all the motions. Why, why deny the motions? I have been here for two years and three days waiting. So he is going to tell me something else now.
* * * * * *
THE DEFENDANT: Whom do I see in order to have another lawyer? I don't want this lawyer, I will not accept him.
During this proceeding in which Scull appeared without his counsel, Scull was not given the opportunity by the trial judge to explain why he objected to his present trial counsel. Rather, each time Scull tried to explain his objections, the trial judge interrupted him. At no time during the proceeding did the judge inquire into Scull's allegations of conflict of interest. We do not believe this is the proper way to conduct an inquiry into the reasons for requesting new representation. It is difficult for a defendant to understand legal proceedings against him when they are in a different language. It is more difficult when the defendant is given little chance to make himself heard. Therefore, we believe the inquiry made into Scull's request to have a new attorney appointed was legally inadequate.
However, towards the end of the trial, Scull stated to the court that he was satisfied with the representation he had received:
THE DEFENDANT: And I have nothing against my attorney, absolutely nothing against him, because the defense that he has done in my case, it could not have been done better.
* * * * * *
I have always wanted [Mr. Van Zamft] as an attorney.
* * * * * *

*1141 Yes, I want Mr. Von Zamft [sic] to represent me as many times as possible in front of the court.
* * * * * *
You can see that I am expressing myself that I am proud of this attorney because the way that he has defended me here, I am very happy about the way he defended me here. Even though it's my skin that is involved in this problem. I have nothing against Mr. Von Zamft [sic].
From this we may conclude that Scull's reasons for requesting the removal of his attorney dissipated as the trial progressed. Accordingly, we believe that although the trial judge did not adequately discern what those reasons were, the failings of the inquiry were mooted by Scull's expressions of satisfaction with Mr. Van Zamft as his attorney. Because this was the only issue raised concerning the guilt phase of the trial, we affirm the convictions for first-degree murder.
The next issue raised by Scull involves the alleged juror misconduct by the jury foreman in embracing Villegas' mother. We believe that any prejudice to Scull that may have occurred through this misconduct was cured by the dismissal of the foreman. While it is true several jurors witnessed this exchange and did not report it, we believe that the individual voir dire conducted by the trial court was sufficient to determine whether the jurors were improperly influenced by witnessing the embrace. The judge asked each juror whether he or she had witnessed the exchange and, if so, would he or she be influenced by it in rendering their sentence recommendation. Each replied that they would not be influenced in any way by witnessing the embrace.
Scull urges this Court to hold that the trial court should have conducted a more extensive inquiry into whether the jurors had been improperly influenced. However, Scull makes no suggestions as to what the court should have done to insure that there was no impropriety, and we do not believe that a more extensive inquiry was required. Accordingly, we find no error in the trial court's decision not to dismiss the entire jury panel.
With regard to sentencing, Scull alleges that most of the aggravating circumstances found by the trial court are either invalid or not supported by the evidence. After reviewing each circumstance individually, we agree that some of these circumstances are not supported by the evidence.

Defendant Caused Great Risk of Death to Many People by Lighting a Fire:
In King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981), we held that under certain circumstances arson can be considered in aggravation for purposes of sentencing a defendant to death. However, we have recently revisited this position. In King v. State, 514 So.2d 354, 360 (Fla. 1987), we found that this aggravating circumstance should be invalidated. As in King, this case contains no facts that point to any person, inside or outside the house, who was at risk of death. On the contrary, the evidence indicates that the fire was confined to one room of a concrete block house and that the fire was minimal enough to have nearly burned out by the time firefighters arrived, six minutes after receiving the call. We cannot say that Scull's actions created great risk of death to many persons when it appears that he put no one at risk. "`"Great risk" means not a mere possibility, but a likelihood or high probability.'" Id. (quoting Kampff v. State, 371 So.2d 1007, 1009 (Fla. 1979)). Accordingly, we cannot agree that there is competent and substantial evidence to support a finding of this aggravating factor.

The Capital Felony was Committed to Avoid Lawful Arrest or Effecting an Escape:
We have held that when the victim is not a law enforcement officer, proof of intent to avoid arrest or effectuate escape must be very strong in order to support a finding of this aggravating factor. Riley v. State, 366 So.2d 19, 22 (Fla. 1978). See Bates v. State, 465 So.2d 490 (Fla. 1985); White v. State, 403 So.2d 331, 338 (Fla. 1981) (elimination of witness must be "dominant *1142 motive" behind murder where victim is not a police officer), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). Scull contends there is no evidence to support the assertion that elimination of a witness was the dominant motive behind these killings. We agree. It is mere speculation on the part of the state that witness elimination was the dominant motive behind the murder committed by Scull. Therefore, we believe that this circumstance is not supported by competent and substantial evidence and must be stricken.

The Capital Felony was Committed for Pecuniary Gain:
While it is true that Scull took Villegas' car following the murder, it has not been shown beyond a reasonable doubt that the primary motive for this killing was pecuniary gain. As in Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981), it is possible that the car was taken to facilitate escape rather than as a means of improving his financial worth. The record simply does not support the conclusion that Villegas was murdered for her car.

The Capital Felony was Heinous, Atrocious, and Cruel:
The state concedes that the evidence does not support this aggravating factor as to Mejides since she died from a single blow to the head. Similarly, Scull does not challenge this circumstance regarding the murder of Villegas. Therefore, we agree that the murder of Lourdes Villegas was especially heinous, atrocious, and cruel, but the murder of Miriam Mejides was not.

The Capital Felony was Cold, Calculated, and Premeditated:
In McCray v. State, 416 So.2d 804, 807 (Fla. 1982), this Court stated that this aggravating factor "ordinarily applies in those murders which are characterized as executions or contract murders, although that description is not intended to be all-inclusive." There is no evidence to suggest that these are contract or execution style murders. In McCray, the defendant approached the van where the victim was seated, yelled, "This is for you," and shot the victim three times. The Court found that the aggravating circumstance of cold, calculated, and premeditated did not apply. Similarly, in this case there is no competent and substantial evidence to indicate heightened premeditation.
While several theories have been advanced as to why these murders took place, there is little evidence to support any of them. The trial court in its sentencing order seems to have accepted all of these theories, finding that they were committed for pecuniary gain, to eliminate witnesses, to effectuate escape, or as an underworld contract killing. Unfortunately, the trial court accepted these theories without the support of the record. Therefore, as aggravating circumstances, they must all be stricken. The remaining aggravating circumstances are that the capital felony was committed while Scull was engaged in committing a burglary, and that the murder of Lourdes Villegas was heinous, atrocious, and cruel.
Scull raises one final issue on appeal. He alleges that the trial judge considered in his sentencing a victim impact statement (VIS) contained in the presentence investigation report (PSI). In doing so, Scull argues, the court violated the principles subsequently enunciated by the United States Supreme Court in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The VIS involved here contained pleas from Mejides' mother and Villegas' sister, detailing the torment each family has suffered since the murders and requesting that Scull receive the death penalty. They were somewhat less detailed and articulate than the VIS in Booth, but essentially they operate in the same way. They both injected irrelevant material into the sentencing proceedings.
We believe that it was error for the trial judge to consider these statements. However, the record is unclear as to whether the judge considered the VIS in his sentencing or whether he merely examined it without actually considering it for purposes of ordering a sentence of death. We further *1143 note that counsel made no objections to consideration of the statements. Because such statements are usually contained in a PSI, it is unreasonable to expect judges to excise those portions of the report that are not proper for consideration. Under Booth, it is error to admit the VIS into evidence before the sentencing or advisory jury. Similarly, it is error for a sentencing judge to consider those statements as evidence of aggravating circumstances. However, when a judge merely sees a victim impact statement contained in a presentence investigation report, but does not consider the statements for purposes of sentencing, no error has been committed.[*]
The state urges, on cross-appeal, that the two mitigating circumstances found by the trial court were unsupported by the evidence. We disagree that these circumstances (lack of prior criminal history and age of defendant) do not find support from the record. The proper standard for determining that a mitigating circumstance is invalid is whether the judge abused his discretion in finding that circumstance. "[I]t is within the trial court's province to decide whether a mitigating circumstance is proven and the weight to be given it." Teffeteller v. State, 439 So.2d 840, 846 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984).
Scull has been adjudicated guilty of arson, robbery with a deadly weapon, armed burglary with intent to commit murder, possession of a weapon while committing a felony, and possession of cocaine, in addition to the two counts of first-degree murder. The state argues that, when considering the existence of this mitigating factor, it is proper to construe the term "prior" to mean prior to the sentencing, not the commission of the murder. Ruffin v. State, 397 So.2d 277, 283 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). However, we do not believe that a "history" of prior criminal conduct can be established by contemporaneous crimes, and we recede from language in Ruffin to the contrary. It was within the trial judge's broad discretion to find that Scull had no significant prior criminal history, and that judgment will be upheld absent a showing of a clear abuse of that discretion. Teffeteller, 439 So.2d at 846. Since no such showing has been made in this case, the mitigating circumstance of lack of prior criminal history is valid.
Scull was twenty-four years old when these murders were committed. The trial judge was in the best position to examine Scull's emotional and maturity level. This Court has frequently held that a sentencing court may decline to find age as a mitigating factor in cases in which the defendants were twenty to twenty-five years old at the time their offenses were committed. Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986); Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). However, these cases do not address the question of whether a trial judge has abused his or her discretion by finding this mitigating circumstance. Scull's age of twenty-four alone could not establish a mitigating factor, but factors which were observable by the judge during the trial and sentencing proceeding support his finding that Scull's emotional age was low enough to sustain this mitigating circumstance.
However, because we believe that the sentencing order is so replete with error, we cannot say that the sentence must be upheld. Accordingly, we affirm Scull's convictions for first degree murder and vacate his sentence of death. Further, we remand this cause to the trial court so that it may conduct proceedings without a jury *1144 and render a new sentencing order consistent with this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[*] In our recent decision in Grossman v. State, 525 So.2d 833 (Fla. 1988), we held that section 921.143(2), Florida Statutes (1985), was invalid insofar as that statute permits the introduction of victim impact evidence as an aggravating factor in capital proceedings. This holding was expressly limited to death penalty cases. Grossman, 525 So.2d at 842, n. 5. It is clear from that decision, and from the decision of the United States Supreme Court in Booth, that victim impact statements may no longer be made a part of presentence investigation reports in capital cases.