563 So.2d 77 (1990)
Manuel PARDO, Jr., Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 72463.
Supreme Court of Florida.
May 31, 1990.
Rehearing Denied July 27, 1990.
*78 Calianne P. Lantz, Sp. Asst. Public Defender, Miami, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen., and Ralph Barreira, Asst. Atty. Gen., Miami, for appellee/cross-appellant.
PER CURIAM.
Manuel Pardo, Jr. appeals from a death sentence imposed after a jury found him guilty of, inter alia, nine counts of first-degree murder. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Pardo and a codefendant were indicted for the nine murders, which occurred in five separate episodes between January and April of 1986. After the defendants' trials were severed, Pardo went to trial on all nine counts. Against the advice of counsel, Pardo, a former police officer, took the stand and admitted that he intentionally killed all nine victims. He said he should avoid culpability, however, because he believed all the victims to be drug dealers, who "have no right to live."[1] The jury found Pardo guilty and recommended the death penalty in each case, by votes ranging from eight-to-four to ten-to-two.[2]
The trial judge found a total of three aggravating circumstances but found that only one of them applied to all the killings: that each was done in a cold, calculated, and premeditated manner without a moral or legal justification. The court found two other aggravating factors applicable to individual murders. The judge found that the purported drug informant was killed to hinder or disrupt the exercise of a governmental function and that another killing was committed for pecuniary gain. The court specifically rejected the state's argument that the final four episodes of killing could qualify as prior capital felonies under section 921.141(5)(b), Florida Statutes (1987).
*79 As to mitigation, the court found that Pardo had no prior significant criminal history (section 921.141(6)(a), Florida Statutes (1987)), and was under an extreme mental or emotional disturbance (section 921.141(6)(b), Florida Statutes (1987)). The judge also said he considered some nonstatutory mitigation, including Pardo's military service, the fact that he had once saved the life of a child, and that he had the love and affection of his family. After weighing the aggravating and mitigating factors, the court imposed the death penalty.
Pardo raises five issues on appeal, none of which has merit.
First, he argues that the trial court erred in not ordering a hearing on his competency to stand trial. Under the facts of this case, there was no requirement to have done so. When trial counsel requested that experts be appointed to examine Pardo and determine his sanity at the time of each episode, the court asked if counsel wanted experts also appointed to determine competency and offered to hold a hearing on the subject. Counsel stipulated that his client was competent and repeated that he only wanted a determination of sanity. The court-appointed experts examined Pardo, found him to have been sane, and also determined that he was competent to stand trial. Thus, not only was there no reason for the court to have ordered a competency hearing, but also there was no prejudice to Pardo, as the hearing would not have benefitted him.
Second, Pardo argues that the state did not carry its burden of proving that he was sane when the offenses were committed. The defense put on an expert witness who testified that Pardo was psychotic, but stated that he did know that murder was illegal and wrong. The state presented three witnesses who testified that Pardo met the Florida standard for sanity. The state argues that Pardo did not present sufficient evidence to raise an issue of sanity. We need not resolve that issue, however, because the state presented competent, substantial evidence that the jury could have accepted as proof of sanity. Thus, there is no merit to the second argument.
Third, Pardo argues that the trial court should have granted a motion for mistrial when the prosecutor twice said during her closing argument that Pardo was trying to "escape" justice or criminal liability. Defense objections to both comments were sustained and the jury was instructed not to consider the arguments of counsel to be evidence and the prosecutor was admonished not to use the word "escape."
Pardo characterizes these remarks as attempts to attack the validity of the insanity defense, which we found reversible error in Garron v. State, 528 So.2d 353 (Fla. 1988). The circumstances of the instant case are entirely different from Garron, in which the prosecutor repeatedly pointed to the insanity defense as a devious legal ploy. The remarks in this case were extremely brief, and the prosecutor drew no logical connection between Pardo's attempts to "escape" guilt and the validity of the insanity defense itself.[3] We see no error in the court's refusal to grant a mistrial.
Fourth, Pardo argues that none of the aggravating circumstances were proven. We disagree. The two referring to specific killings were supported in the record by a witness who testified that Pardo told him one victim was killed because he was an informer and the other was killed as part of a drug "rip-off." Pardo's own testimony, as well as other abundant evidence in the record, shows that the killings *80 were, in effect, executions, which we have consistently held demonstrates the kind of heightened premeditation that will support a finding that the killings were cold, calculated, or premeditated. See, e.g., Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). We find no error in the court's having found these three aggravating circumstances.
Finally, Pardo argues that the trial court should have found the statutory mitigating circumstance applying to defendants who cannot appreciate the criminality of their conduct or are seriously impaired in their ability to conform their conduct to the requirements of the law. As proof, the trial judge was supposed to have focused on Pardo's testimony that he did not consider drug dealers people and that killing them was justified. However, there was no testimony that Pardo's ability to conform his conduct was impaired or that he did not know that killing these victims was wrong. The court did not have to accept Pardo's self-serving statements regarding his motives.
As authorized by Florida Rule of Appellate Procedure 9.140, the state filed a cross-appeal on two issues. The first concerns the trial court's refusal to apply the aggravating factor of a prior conviction for a capital felony to the final four murder episodes. The judge stated:
It is the view of this Court that the Legislature intended this aggravating factor to refer to offenses other than the ones for which he is being accused and tried. Thus, notwithstanding the fact that the Defendant has been convicted of several offenses in this trial, same is not an aggravating factor.
This is not a correct statement of the law. We have consistently held that the contemporaneous conviction of a violent felony may qualify as an aggravating circumstance, so long as the two crimes involved multiple victims or separate episodes. Wasko v. State, 505 So.2d 1314 (Fla. 1987). Under similar circumstances in Echols v. State, 484 So.2d 568, 576-577 (Fla. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 166 (1986), this Court stated:
We find that all three aggravating factors are established by the evidence beyond every reasonable doubt. We add that the record shows also as a fourth aggravating factor that the appellant had been previously convicted of robbery with a firearm and armed burglary with an assault... . We cannot determine whether the trial judge overlooked this fourth aggravating factor or was uncertain as to whether convictions for crimes committed concurrently with the capital crime could be used in aggravation. However, we note its presence in accordance with our responsibility to review the entire record in death penalty cases and the well-established appellate rule that all evidence and matters appearing in the record should be considered which support the trial court's decision.
(Citations omitted.)
Similarly, the state argues that the trial court erred in finding the statutory mitigating circumstance that Pardo had no prior significant criminal history. Except with respect to the two killings which occurred in the first episode, this, too, was a mistake of law.
Ordinarily, it is within the trial court's discretion to decide whether a mitigating circumstance is proven. Scull v. State, 533 So.2d 1137 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1937, 104 L.Ed.2d 408 (1989); Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984). This does not mean, however, that we are bound to accept the trial court's findings when, as here, they are based on misconstruction of undisputed facts and a misapprehension of law.
The trial court apparently viewed Pardo's crimes as one lengthy criminal incident. That analysis is flawed, in that each of the episodes of killing was singular, discrete, and only tenuously related, if at all, to the other episodes. The first two murders took place on January 22, 1986, and purportedly involved a drug "rip-off." *81 The next episode occurred January 28; the victim was the man who had made Pardo's silencer and who supposedly was an informant. The third episode, on February 27, was another probable drug rip-off. The fourth, on April 22, involved two women acquaintances who had angered Pardo and his accomplice. The final one was on April 23, the victims being an alleged drug dealer (Pardo's alleged boss) and his woman companion.
Contemporaneous criminal conduct cannot be considered as prior criminal activity. Scull. However, it would be absurd to say that Pardo, who had already murdered two people, had no significant history of prior criminal activity when he committed the last seven murders. Only the criminal activity, not the convictions for that activity, must occur prior to the murders for which the defendant is being sentenced. Perry v. State, 522 So.2d 817 (Fla. 1988).
In sum, there were four proven aggravating circumstances, one proven statutory mitigating circumstance, and several nonstatutory mitigating circumstances involving the defendant's character. While no proportionality argument has been raised, we have compared the facts of this case to those of others where the death penalty has been imposed and find that the sentence of death is the appropriate penalty for these nine cold-blooded killings.
We affirm the judgments of guilt for all eighteen counts, the sentence of death, and the fifteen-year prison term for the noncapital crimes.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The state's theory was that some, though not all, of the victims were drug dealers but that Pardo was also a drug dealer and that his motive was robbery. The state argued that one victim was killed because he was a confidential informant for federal authorities, and that two women were killed because they had taken money from Pardo and his accomplice to buy a video cassette recorder, but had not done so.
[2] The jury also found Pardo guilty of assorted lesser crimes including robbery and use of a firearm in the commission of a felony.
[3] This case also is materially different from Rosso v. State, 505 So.2d 611 (Fla. 3d DCA 1987), in which the district court reversed a murder conviction because the prosecutor made comments that could easily be construed as a determined attack on the insanity defense. The prosecutor said:

"I have 10 minutes to talk to you about the defense of insanity. The defense by which a person comes into Court and says, `I murdered a 15 year old girl and almost murdered my best friend and blew her eye away, and I get to walk. I get to get off. I am not legally guilty. I am not responsible and you cannot hold me responsible.'"
Id. at 612.